Rel: September 26, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2025-0211

_____

### Ex parte M.D.D.

### PETITION FOR WRIT OF CERTIORARI
### TO THE COURT OF CRIMINAL APPEALS

### (In re: State of Alabama

### v.

### M.D.D.)

### (Blount Circuit Court: CC-10-112.60, CC-10-112.61, CC-10-112.80, and CC-10-112.81;
### Court of Criminal Appeals: CR-2023-0303)

WISE, Justice.

M.D.D. petitioned this Court for a writ of certiorari to review the Court of Criminal Appeals' decision in State v. M.D.D., [Ms. CR-2023-0303, Jan. 17, 2025] ___ So. 3d ___ (Ala. Crim. App. 2025) ("M.D.D. III"), which reversed the Blount Circuit Court's judgment. We granted certiorari review to consider whether the Court of Criminal Appeals' decision in this case conflicts with prior caselaw holding that appellate courts will not address arguments that have not been presented in an appellant's brief.

Facts and Procedural History

In 2011, M.D.D. was convicted of first-degree sodomy of his daughter, E.D., a violation of § 13A-6-63, Ala. Code 1975. The Court of Criminal Appeals affirmed his conviction in an unpublished memorandum. See M.D.D. v. State (No. CR-11-0100, Aug. 10, 2012), 152 So. 3d 456 (Ala. Crim. App. 2012) (table) ("M.D.D. I").

> "In July 2013, M.D.D. filed a Rule 32[, Ala. R. Crim. P.,] petition that included two claims of ineffective assistance of counsel and a claim that the State had withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). M.D.D.'s Brady claim was related to one of his ineffective-assistance-of-counsel claims in that both claims involved a report issued by the Department of Human Resources ('DHR'). Specifically, in 2009 an unidentified individual reported to DHR that E.D. and her brother, J.D., were being sexually abused by M.D.D., and Janet Salas, a DHR

2

investigator, conducted an investigation in which she interviewed E.D., E.D.'s parents, J.D., and employees at E.D.'s school ('the 2009 investigation'). Salas subsequently issued a report ('the 2009 DHR report') in which she found the allegation to be unsubstantiated, based in part on the fact that E.D. and J.D. had both denied the allegation. Thus, DHR closed the case. M.D.D.'s <u>Brady</u> claim alleged that the State had suppressed the 2009 DHR report, and one of his ineffective-assistance-of-counsel claims alleged that his counsel had failed to call any witnesses who could testify to the report.

"Following an evidentiary hearing, the circuit court granted M.D.D. relief on his two ineffective-assistance-of-counsel claims but did not address his <u>Brady</u> claim, which had been rendered moot by the fact that the court had granted relief on the ineffective-assistance-of-counsel claims."

<u>M.D.D. III</u>, ___ So. 3d at ___. The State appealed the circuit court's judgment to the Court of Criminal Appeals.

The Court of Criminal Appeals held that the circuit court had erroneously granted M.D.D. relief on his ineffective-assistance-of-counsel claims and remanded the case to the circuit court. <u>State v. M.D.D.</u>, 324 So. 3d 425 (Ala. Crim. App. 2020) ("<u>M.D.D. II</u>"). In a special writing, Judge Minor noted that, because the Court of Criminal Appeals had reversed the circuit court's judgment, M.D.D.'s unaddressed <u>Brady</u> claim was "no longer moot" and awaited disposition. <u>M.D.D. II</u>, 324 So. 3d at 447 (Minor, J., concurring specially).

3

"On January 20, 2021, the circuit court denied M.D.D.'s Brady claim but did not provide any findings of fact. M.D.D. filed a notice of appeal, but the appeal was dismissed because the notice was untimely. M.D.D. subsequently sought the circuit court's permission to file an out-of-time appeal. See Rule 32.1(f)[, Ala. R. Crim. P.].

"On June 2, 2021, Judge Steven King, who had presided over the Rule 32 proceedings to that point, filed a notice of recusal with the Alabama Supreme Court. Judge Philip Seay was appointed to preside over the Rule 32 proceedings, and he subsequently granted M.D.D. permission to file an out-of-time appeal of the denial of his Brady claim. M.D.D.'s appeal was assigned case number CR-2021-0244. On appeal, this Court stated that, because the circuit court had held an evidentiary hearing on M.D.D.'s Rule 32 petition, the court was required to make specific findings of fact regarding the Brady claim. Thus, this Court issued an order that remanded the case to the circuit court a second time with instructions to that effect.

On February 1, 2023, Judge Seay issued a judgment containing detailed findings of fact regarding M.D.D.'s Brady claim, and, based on those findings, Judge Seay granted M.D.D. relief on that claim."

M.D.D. III, ___ So. 3d at ___. In its order granting M.D.D.'s Rule 32, Ala. R. Crim. P., petition on the Brady claim, the circuit court stated:

"'Findings of Fact

"'Upon consideration of all the foregoing, the court finds the following facts to be supported by a preponderance of the evidence, as is required by Rule 32.3 of the Alabama Rules of Criminal Procedure:

4

"'[M.D.D.] was indicted on April 29, 2010, by the Blount County grand jury for the Class A felony offense of sodomy in the first degree pursuant to § 13A-6-63(a)(3)[, Ala. Code 1975]. The statute under which [M.D.D.] was charged mandates that the person charged, being 16 years old or older, engages in sodomy with a person who is less than 12 years old. The indictment does not specify the particular date or dates on which the offense was allegedly committed by [M.D.D.] The alleged victim in this case attained the age of 12 on July 3, 2009.

"'After a trial, [M.D.D.] was convicted of the charged crime and was sentenced to a term of 55 years' imprisonment, which is within the sentencing range for a Class A felony such as that charged in the indictment, but is substantially in excess of the maximum sentence permissible for the Class B felony found in § 13A-6-64[, Ala. Code 1975], which would involve the same acts charged in the indictment, but with the victim being over the age of 12 but less than 16 years old. See 13A-5-6[, Ala. Code 1975].

"'The Brady claim advanced by M.D.D. concerns a report prepared by the Blount County Department of Human Resources in May of 2009. That report, which relates to allegations of child abuse and/or neglect of E.D., the victim in this case, was admitted into evidence at the hearing held on the Rule 32 petition as Defendant's Exhibit 3 and is referred to herein as the 2009 CAN.

"'The first two pages of Defendant's Exhibit 3 are cover letters dated May 8, 2009, on the letterhead of the Blount County Department of Human Resources and are signed by Cheryl

5

Helton, Program Supervisor. The contents of the letters are the same. Both state that they reference E.D., the victim in the case, whose date of birth is shown to be July 3, 1997. The letters state that they are enclosing an initial report on E.D. regarding allegations of sexual abuse. The first of the cover letters is addressed to Blount County District Attorney, … and the second is addressed to Ms. Sue Ashworth, who was an investigator employed by the Blount County Sheriff's Office at the time.

" 'At the bottom of page 5 of the 2009 CAN, in an area designated as "Allegations," it appears that an allegation of "Sexual Abuse: Sexual Molestation" was received by DHR at 11:40 a.m. on May 6, 2009. The "Person at Risk" was said to be E.D., and the "Person Responsible" was identified as M.D.D., shown as the "Father (Biological)." The "Disposition" was "Not Indicated."

" 'The "INTAKE NARRATIVE" also begins at the bottom of page 5 and continues through the middle of page 6. Although the narrative is redacted on page 6, it appears that someone claimed to have been "told by E.D. (age 11) that E.D. is being touched on her privates in a sexual manner by her father, M.D.D."

" 'The "ASSESSMENT NARRATIVE," which begins in the middle portion of page 6 of the CAN, discloses that a worker named Janet Salas made DHR's first contact with the alleged abuse victim at 10:00 a.m. on May 7, 2009, in a face-to-face visit at E.D.'s school. During that contact, E.D. "denied that she has been touched by anyone. She denied that she told anyone that she had been touched by

anyone. She stated that if someone said that, they made it up, because she did not say it." On May 12, 2009, Ms. Salas asked school staff if they had any concerns about E.D. and was told "there was nothing that had been reported. Attendance is good and participation in class is good." Later, the same day, Ms. Salas conducted a face-to-face interview at the school with J.D., E.D.'s brother. J.D. told her that "everything is fine at home." After the DHR worker discussed good and bad touches with J.D., he expressed his understanding of each, and "denied having any bad touches." He denied knowing anyone who had bad touches. He does not think his sister or brother has had any bad touches, and that they would have told if they did. The "ASSESSMENT NARRATIVE" concludes on page 7 with the allegation of sexual abuse by the father towards his daughter being not "substantiated by the assessment," with "no potential for future maltreatment."

"'The following section of the report, entitled "PROTECTIVE CAPACITIES," recites 26 strengths of M.D.D. in taking care of his daughter, the alleged victim, and no weaknesses or areas of concern.

"'As a part of the pretrial discovery process, the Blount County District Attorney's office had produced to trial counsel for [M.D.D.] two documents that made reference to a complaint made to DHR in May of 2009: (1) An incident-offense report, and (2) a DHR CAN report concerning a sex-abuse allegation made on February 19, 2010. The produced documents disclose that the May of 2009 complaint to DHR was closed "not indicated" after E.D. denied being sexually abused. The 2010 DHR CAN states that

the last incident of abuse took place on or about February 2, 2010, when E.D. was out of school a couple of days with a foot injury. E.D. was over the age of 12 on February 2, 2010.

"'Neither of the documents produced to defense counsel by the State made specific reference to the existence of a formal investigation and resulting report by DHR in 2009. However, before the defendant's trial began in August of 2011, [M.D.D.'s] counsel served a subpoena duces tecum on the Blount County DHR requesting "Any documents or reports pertaining to ... E.D."

"'On the date the subpoena was issued, DHR filed a motion to quash the subpoena or, in the alternative, a motion for a protective order. Judge King granted the protective order and directed that DHR produce the requested documents for an in camera inspection.

"'Although DHR apparently did produce some records to the court pursuant to [M.D.D.'s] subpoena duces tecum, it is undisputed that the Blount County Department of Human Resources did not, prior to M.D.D.'s sodomy trial, produce the 2009 CAN in which the abuse allegation was found to be "not indicated," based in part on E.D.'s denial that she had been sexually abused by her father. In fact, the 2009 CAN was not produced by DHR until June of 2016, nearly six years after the 2011 subpoena duces tecum was served in connection with another case in which M.D.D. is the defendant.

"'The 2011 trial testimony of E.D. was summarized by the Court of Criminal Appeals as follows:

8

"'"E.D., who was 14 at the time of trial, testified against M.D.D. E.D. told the jury that M.D.D. would 'take [her] clothes off [her] and [M.D.D.] would take his clothes off and then M.D.D. would put his front part in [her] butt.' (R. 138.) E.D. stated that M.D.D. would show her 'naked pictures' on the computer which depicted men having anal sex with children in order to 'make [E.D.] think it was normal' for that activity to take place between them. (R. 140.) E.D. also claimed that M.D.D. would take naked pictures of her, but that '[M.D.D.] erased them.' (R. 144.) E.D. testified that her mother was initially supportive, but later 'she tried to get me to change my story and she was not as supportive then.' (R. 155.)"

"'State v. M.D.D., 324 So. 3d at 427.

"'On cross examination at the trial, defense counsel asked E.D. the following question:

"'"Q: Have you ever told anyone else that your father did not do this to you?"

"'E.D.'s answer was:

"'"A: No, sir, because he did do it to me."

"'No witness from the Blount County Department of Human Resources testified at the trial, although Blount County Sheriff's

9

investigator Sue Ashworth was a witness for the State.

"'As far as objective signs possibly indicating abuse of E.D., the Court of Criminal Appeals summarized the physical findings of Dr. Joines, a physician who examined E.D. in 2010, as revealing some thickening and abrasions in E.D.'s rectal area, which were unusual in her opinion: Unless one is being treated for chronic constipation or some kind of rectal or anal abnormality, you should see completely smooth areas with a little ridging of the skin, according to the doctor. She also testified that, other than chronic constipation, such abnormalities could be explained by any kind of penetration or any kind of object. Dr. Joines further testified that there was no indication that E.D. had herpes or any other sexually transmitted disease.

"'E.D.'s mother testified that E.D. suffered from frequent constipation and that both she and M.D.D. had genital herpes.

"'In addition to the foregoing findings of fact, the court agrees with, and adopts, the following findings made by Judge King in his order granting relief in April of 2020:

"'"It is also clear that there is additional information contained in the May 2009 DHR CAN report which the discovery items produced to [M.D.D.] did not reveal. These include the circumstances surrounding the reporting of the suspected abuse and the reporter, school staff having no concerns about the victim, the victim's mother being cooperative and being interviewed, [M.D.D.] being cooperative and being interviewed,

and both parents being given 'strength' in every category within the 'Protective Capacities' section of the report." In addition to those facts found by Judge King, there are additional facts in the 2009 CAN that were not provided before trial by the State. In particular, the materials furnished by the State to trial counsel did not disclose the specific information found in the actual CAN that DHR investigator Janet Salas made in DHR's first contact with the alleged abuse victim at 10:00 a.m. on May 7, 2009, in a face-to-face visit at E.D.'s school. The discovery materials provided do reveal that E.D. denied being touched by anyone, but they do not contain the information that E.D. also "denied that she told anyone that she had been touched by anyone or that she stated that if someone said that, they made it up, because she did not say it." The materials produced do not refer to Ms. Salas asking school staff on May 12, 2009, whether they had any concerns about E.D. and being told "there was nothing that had been reported. Attendance is good and participation in class is good." The materials produced by the State do not mention Salas having interviewed E.D.'s brother, J.D., on May 12, 2009, and being told by him that everything is fine at home. The discovery materials produced do disclose that J.D. denied having any bad touches, but they do not reveal his statements in which he denied knowing anyone who had bad touches. "He does not think his sister or brother has had any bad touches; they would have told if they did." The discovery materials produced also do not specifically mention DHR's conclusion that the allegation of sexual abuse by father to his daughter was not "substantiated by the assessment," with "no potential for future maltreatment."

11

" 'There had been discovery requests made and subpoenas issued through which the DHR CAN report of the May 9, 2009, investigation should have been produced. However, no DHR CAN report regarding the May 9, 2009, investigation was produced prior to trial. The DHR CAN report regarding the May 9, 2009, investigation was only produced to [M.D.D.'s] legal counsel (different from trial counsel) on or about June 3, 2016 in case CC-11-331, which is a related case pending against [M.D.D.] The DHR CAN report which was produced on or about June 3, 2016, contained redactions. The redacted DHR CAN report regarding the May 9, 2009, investigation was admitted as Defendant's Exhibit 3 to the hearing.

" 'There is a reasonable probability that actually having the May 2009 DHR CAN report, as opposed to just knowing of it, would have made a difference in the outcome.

" 'Discussion

" '… In the opinion of this court, when the <u>Brady</u> claim is actually considered in view of the findings of fact set out above, it is due to be granted under the applicable principles of law.

" '<u>Brady v. Maryland</u>, 373 U.S. 83 (1963), held that, under the Fourteenth Amendment to the U.S. Constitution, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Id.</u> at 87. Non-disclosure of impeachment evidence that affects the

12

credibility of a witness is also prohibited under Brady. If the withheld evidence is deemed to be material: "A new trial is required if 'the false testimony could … in any reasonable likelihood have affected the judgment of the jury.'" Giglio v. U.S., 405 U.S. 150, 154 (1972) [(citation omitted)]. Strickler v. Greene, 527 U.S. 26[3] (1999) summarizes the elements of a Brady violation in the following manner:

> "'"There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

"'Id. at 281-282.

"'In this case, the evidence in question is the May 2009 DHR CAN in which E.D. denied to a DHR investigator that she had been inappropriately touched by anyone, less than two months before she became 12 years of age. It is beyond question that the facts set out in the 2009 CAN were favorable to [M.D.D.], in that they are partially exculpatory and are clearly useful for the purpose of impeaching E.D.'s testimony. If the jury believed, based upon the 2009 CAN, that E.D. had not been sexually abused as of May 7, 2009, it would have been the State's burden at trial to prove beyond a reasonable doubt that between that date and July 3, 2009, her twelfth birthday, … she had been sodomized by M.D.D. in order for him to be found guilty of the charged Class A felony. The impeaching nature of the undisclosed

CAN would have been particularly favorable to M.D.D.'s defense because of the damage to the victim's credibility that could have been inflicted had its contents been known to defense counsel. Instead of being forced simply to accept E.D.'s answer on cross-examination that she had never told anyone that M.D.D. had not abused her because "he did do it to me," defense counsel could have conducted a vigorous interrogation of the witness if he had had the unproduced CAN in hand at the trial. He could have specifically asked E.D. via leading questions whether it was true that she had told DHR worker Salas that her father had not touched her inappropriately during the interview at her school on May 7, 2009; whether it was true that she told Salas at that time that she had never told anyone that she had been inappropriately touched by anyone; and whether it was true that she had said that anyone who said that she had mentioned being touched was lying. If E.D. denied making any of those statements, Investigator Salas could have been called as a defense witness to contradict E.D.'s testimony. The 2020 decision of the Court of Criminal Appeals appears to recognize implicitly the value to M.D.D.'s defense[] that actually having the 2009 CAN would have provided, noting in its opinion that "trial counsel did not have a particular statement to use for purposes of impeachment after the victim denied at trial that she had ever recanted or denied the allegations." State v. M.D.D., 324 So. 3d at 445. If the 2009 CAN had in fact been produced, M.D.D.'s lawyer would have had such a "particular statement" with which to impeach E.D., which would undeniably have been favorable to the defense of the case.

14

"'The second element of a <u>Brady</u> violation is the government's suppression of evidence favorable to the defendant. While it is true that the 2009 CAN finally produced in the 2016 proceeding contained a cover letter addressed to the District Attorney, it is inferable that, although the CAN may not have actually been sent to the D.A.'s office, it seems to be the clear intention of DHR to transmit it to the prosecutor. Other than that cover letter, there is no direct evidence found in the record to suggest actual possession or knowledge on the part of the District Attorney's Office. Whether or not the District Attorney had possession of, or even knowledge of, the 2009 CAN ultimately does not matter on the suppression issue, because at a minimum, DHR's knowledge of the report is imputed to the State prosecutors. The Department of Human Resources is the sole State agency responsible for the investigation of reports of suspected child abuse committed outside of schools or state-operated child residential facilities. Section 26-14-6.1, [Ala. Code 1975]. The knowledge of persons intimately connected with the State's case, "such as police, <u>investigative agencies</u> and officers, and all law enforcement agencies which have participated in the investigation or evaluation of the case and regularly report or have reported to the prosecutor" is imputed to the State, and that knowledge imposes a duty of disclosure. <u>E.g.</u>, <u>Hill v. State</u>, 651 So. 2d 1128, 1132 (Ala. Crim. App. 1994); <u>Smith v. State</u>, 698 So. 2d 189, 208 (Ala. Crim. App. 1996). The State produced a 2010 DHR CAN, which furnished the basis for the prosecution of M.D.D. It did not, however, produce the favorable 2009 CAN, either during discovery or even when that document fell within the purview of a subpoena duces tecum filed by

[M.D.D.] to DHR. The 2009 DHR CAN was therefore clearly suppressed by the State for the purposes of the <u>Brady</u> decision and its progeny. While the 2009 DHR CAN was not produced prior to the 2011 trial, there is no reason in the record, other than the aforementioned DHR cover letter, for this court to suggest the Blount County District Attorney's office had possession or knowledge of the 2009 CAN, wherein E.D. denied any wrongful touching by [M.D.D.] The bottom line is that while [M.D.D.'s] counsel used every effort to discover exculpable evidence, most importantly and directly through a pretrial subpoena duces tecum to DHR, the 2009 CAN was never produced to [M.D.D.], thus denying [M.D.D.] and his counsel the opportunity to use it at trial.

"'The final "prejudice" component of a <u>Brady</u> violation is the requirement that the suppressed evidence be "material either to guilt or to punishment." 373 U.S. at 87. In the case at hand, the undisclosed 2009 DHR CAN is, in the opinion of the court, material both to [M.D.D.'s] guilt and to potential punishment.

"'Favorable evidence is material, and constitutional error results from its suppression by the State, only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. <u>U.S. v. Bagley</u>, 473 U.S. 667, 682 (1985); <u>see</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 433-434 (1995). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. <u>U.S. v. Bagley</u>, 473 U.S. at 682.

"'The case against M.D.D. rests largely on the credibility of E.D., the victim. The medical

16

evidence that E.D. was sodomized was not conclusive and was susceptible to other explanations. As Judge King pointed out in his order, in a case such as this one, impeachment is certainly an appropriate method of defense, and perhaps the only method or manner of defense. Having actual possession of the suppressed 2009 CAN would have enabled defense counsel to cast significant doubt on the testimony of E.D. to such an extent that the outcome of the case reasonably could have been an outright acquittal. If E.D. had been impeached by the use of specific statements she had made to a DHR investigator and the subsequent testimony of that investigator, it is reasonably probable that E.D.'s entire testimony, or portions thereof, could have been disregarded by the jury.

" 'The court also finds that the suppression of the 2009 DHR CAN was material to the issue of punishment in this case. Only if the charged offense took place before E.D.'s twelfth birthday, which occurred on July 3, 2009, could [M.D.D.] have been found guilty of sodomy in the first degree and sentenced to more than 20 years' imprisonment. The 2009 CAN report indicates that E.D. denied that any abuse had occurred on or before May 7, 2009. In February of 2010, after E.D. had become 12 years old, she told a DHR representative that she had been molested by M.D.D. on February 2 or February 3 of 2010 while she was home from school. No other specific instances of alleged abuse were before the court at the trial. It is the opinion of the court that there is a reasonable probability that the jury could have accepted E.D.'s denial of abuse when she was 11 years old in May of 2009 as true, but have believed the testimony that she was abused when she was

17

12 years old in February of 2010. Assuming that was the case, the jury could have convicted [M.D.D.] of sodomy in the second degree, which is a Class B felony, which carries a maximum sentence of 20 years' imprisonment, but not of sodomy in the first degree, the Class A felony that enabled the court to impose a sentence of 55 years.

"'<u>Conclusion</u>

"'Based on the foregoing findings of fact and discussion of the application of the law to the facts, it is the opinion of the court that [M.D.D.] proved by a preponderance of the evidence that evidence favorable to [him] was suppressed by the State of Alabama prior to his trial and conviction and that there is a reasonable probability that, in accordance with <u>Brady</u>, had the 2009 CAN evidence been disclosed to the defense, the result of the proceeding would have been different. Accordingly, [M.D.D.'s] petition for postconviction relief under Rule 32 … is hereby GRANTED by the court.'

"(C. 41-55.)"

<u>M.D.D. III</u>, ___ So. 3d at ___-___.[1] The State filed a notice of appeal from the circuit court's order granting the Rule 32 petition, which was assigned case number CR-2023-0303.

---

[1]The Court of Criminal Appeals subsequently dismissed M.D.D.'s appeal in case number CR-2021-0244 as moot because M.D.D. had obtained the relief he sought.

18

The Court of Criminal Appeals reversed the circuit court's judgment granting M.D.D. relief as to his Brady claim. M.D.D. III, supra. M.D.D. filed an application for rehearing, which the Court of Criminal Appeals overruled, without an opinion. M.D.D.'s petition for the writ of certiorari followed.

## Standard of Review

> "'"'"On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of [Criminal] Appeals."'" Ex parte S.L.M., 171 So. 3d 673, 677 (Ala. 2014) (quoting Ex parte Helms, 873 So. 2d 1139, 1143 (Ala. 2003), quoting in turn Ex parte Toyota Motor Corp., 684 So. 2d 132, 135 (Ala. 1996)).'

"Ex parte Jones, 322 So. 3d 970, 975 (Ala. 2019)."

Ex parte Hicks, 378 So. 3d 1137, 1139 (Ala. 2022).

## Discussion

In his brief in support of the petition for the writ of certiorari, M.D.D. argues that, in reversing the circuit court's judgment, the Court of Criminal Appeals addressed arguments that had not been made by the State and that that decision conflicts with prior caselaw holding that that

19

arguments not made by a party on appeal are waived. In its appellant's brief in the Court of Criminal Appeals, the State argued:

"This case has a long and convoluted history. The issue in the State's appeal, however, is not. It is actually quite simple: did the State violate the provisions of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)? The answer, for the reasons more fully set out below, is no.

"Although this case has an extensive procedural and factual history, this Court need look no further than its own published opinion in this case in order to resolve most, if not all, of the issues remaining here. In <u>State v. M.D.D.</u>, 324 So. 3d 425 (Ala. Crim. App. 2020), this Court addressed the underlying factual history and procedural history regarding the disputed DHR investigation which resulted in a report being issued in May of 2009. Those findings are crucial. Specifically, it is undisputed that there was an investigation previously conducted by DHR during which the trial court later determined that the defendant was interviewed as a part of the investigation and was cooperative. <u>Id.</u> at 443. Moreover, the existence of the prior investigation was briefly referenced in the [presentence-investigation] report and the knowledge of a prior investigation as well as prior denials of any wrongdoing by the victim were discussed at the motion for new trial hearing. <u>Id.</u> at 438. In fact the State objected to any claim of a <u>Brady</u> violation during the hearing. <u>Id.</u>

"What M.D.D. is attempting to do and, unfortunately, has been successful at in the trial court below, is to obscure and confuse the issue of whether he was aware of the investigation that resulted in the May 9, 2009 DHR report as opposed to when he actually received the report for the first time. It is a distinction with a difference. Unaddressed in any substantial way by the trial court is any discussion or finding as to whether the information could have been obtained by M.D.D. through his own efforts. There is no <u>Brady</u> violation

20

when the information in question could have been obtained by the defendant through his own efforts. Jones v. State, 322 So. 3d 979, 1025 (Ala. Crim. App. 2019). Evidence is not suppressed when a defendant either knew or should have known of the essential facts that would have allowed him to take advantage of any exculpatory evidence. Id.

"This Court need look no further than its published opinion in this case to determine that M.D.D. knew of the previous investigation and knew that he had been 'cleared' because his attorney referenced that in arguments during the motion for new trial hearing. State v. M.D.D., 324 So. 3d at 438. M.D.D.'s counsel stated that these allegations 'were reviewed and were found to be unfounded.' Id. Counsel further asserted that this occurred on almost 'an annual basis.'

"If that is not enough basis to reject M.D.D.'s claim, the trial court found that M.D.D. himself was interviewed and was cooperative during the May 9, 2009, investigation. Id. at 443. 'No Brady violation occurs when the facts alleged to have been suppressed are within the knowledge of the defendant.' Jones v. State, 322 So. 3d at 1025. That is exactly the case here. M.D.D. knew that he had previously been subject to numerous DHR investigations which had apparently 'cleared' him of any abuse of his daughter.

"In the majority of cases in which the State appears before this Court it seeks for this Court to uphold the exercise of discretion by a trial court. This case is clearly an exception but for the best of reasons: the trial court failed to exercise sound discretion and indeed abused its discretion in erroneously concluding that the State suppressed exculpatory evidence in violation of Brady v. Maryland. 'A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision.' Hodges v. State, 926 So. 2d 1060, 1072 (Ala. Crim. App. 2005) (quoting

21

State v. Judge, 686 So. 2d 528, 530 (Ala. Crim. App. 1996)). That is exactly the case here. The trial court's ruling was based on an incorrect conclusion of law that the State violated [M.D.D.'s] rights under Brady. As shown above, it did not. Accordingly, the judgment of the Circuit Court of Blount County is due to be reversed."

State's brief in M.D.D. III, pp. 8-11.

In his appellee's brief filed in the Court of Criminal Appeals, M.D.D. argued, in part:

"The final Brady element is whether the suppressed evidence was 'material,' either to the guilt of the defendant or to possible punishment. Brady v. Maryland, 373 U.S. at 87. The Supreme Court, in U.S. v. Bagley, 473 U.S. 667, 682 (1985), defined material evidence for disclosure purposes as follows:

"'[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'

"In its well-reasoned order granting relief, the lower court found that the State's suppression of the 2009 report was material to both issues, guilt and punishment.

"The case against M.D.D., as both circuit judges found, lacked compelling physical and medical evidence demonstrating that the offense actually occurred. Judge King, who presided over M.D.D.'s trial, commented in his order granting Rule 32 relief, that there was 'no scientific and/or physical evidence of abuse' (Supp. 219), and Judge Seay pointed out that the medical evidence demonstrating

22

that E.D. had been assaulted 'was not conclusive and was susceptible to other explanations' (C. 53). Under such circumstances, it is obvious that the testimony of the alleged victim is absolutely critical, and impeachment, if it is possible, is essential from the defense standpoint; in Judge King's words, when 'the only evidence of the crime alleged is the statement of the victim, impeachment is certainly an appropriate method of defense, and perhaps the only method or manner of defense' (Supp. 219). Judge Seay's order in this case, as already discussed, set out in detail how the suppressed CAN [report] could have been used to impeach E.D.'s testimony. He concluded, justifiably, that the document was material to the issue of guilt because having it 'would have enabled defense counsel to cast significant doubt on the testimony of E.D. to such an extent that the outcome of the case reasonably could have been an outright acquittal. If E.D. had been impeached by the use of specific statements she had made to a DHR investigator and [by] the subsequent testimony of that investigator, it is reasonably probable that E.D.'s entire testimony or portions thereof could have been disregarded by the jury' (C. 54).

"Regarding materiality as to punishment, abuse of a child under twelve years old under Section 13A-6-63(a)(3)[, Ala. Code 1975,] is a Class A felony, with a possible sentence of between ten years and 99 years or life in prison. If the victim of such abuse is twelve or over, the offense is a Class B felony, with a maximum possible sentence of twenty years. § 13A-6-64, Code of Alabama (1975). M.D.D. was sentenced to 55 years imprisonment, well in excess of the possible allowable sentence under § 13A-6-64. When E.D. reported in February of 2010 that she had been abused earlier that month, when she was home from school (C. 16), she was seven months past her twelfth birthday. She had of course denied being improperly touched in May of 2009, as is demonstrated by the suppressed 2009 CAN [report].

23

"The court's order granting M.D.D.'s petition found that under the circumstances, 'there is a reasonable probability that the jury could have accepted E.D.'s denial of abuse when she was eleven years old in May of 2009 as true, but have believed the ... testimony that she was abused when she was twelve years old in February of 2010' (C. 54). If that had occurred, of course, M.D.D. could not have been sentenced to fifty-five years incarceration, but would instead have been subject to a maximum sentence of twenty years.

"It is the position of the defendant that the circuit court's conclusion that the three essential elements of a <u>Brady</u> violation exist in this case is abundantly supported by the evidence before the court. It cannot seriously be questioned that the 2009 DHR CAN [report], a document highly favorable to M.D.D.'s defense, was suppressed by the State even after it was the subject of a subpoena, and that its contents -- if disclosed to the defense -- could very well have affected the outcome of the case. The lower court's findings on the <u>Brady</u> issue have certainly not been shown by the State to be 'clearly erroneous,' and they must therefore be upheld by this Court."

M.D.D.'s brief in <u>M.D.D. III</u>, pp. 22-26.

In its reply brief in the Court of Criminal Appeals, the State reiterated the arguments from its opening brief, stating, in pertinent part:

"The trial court's ruling was based on an incorrect conclusion of law that the State violated M.D.D.'s rights under <u>Brady</u>. 'No <u>Brady</u> violation occurs when the facts alleged to have been suppressed were within the knowledge of the defendant.' <u>Jones v. State</u>, 322 So. 3d [979,] 1025 [(Ala. Crim. App. 2019)]. As shown above, the alleged facts were known by M.D.D. at the time of the trial."

24

State's reply brief in <u>M.D.D. III</u>, p. 4.

In its opinion, the Court of Criminal Appeals stated:

"The sole issue in this appeal is whether the circuit court erred by granting M.D.D. relief on his <u>Brady</u> claim.

"In <u>Bryant v. State</u>, 181 So. 3d 1087 (Ala. Crim. App. 2011), this Court stated:

"'"To [establish] a <u>Brady</u> violation, a defendant must show that '"(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial."' <u>Johnson v. State</u>, 612 So. 2d 1288, 1293 (Ala. Cr. App. 1992), quoting <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990), cert. denied, <u>Stano v. Singletary</u>, 516 U.S. 1122, 116 S. Ct. 932, 133 L. Ed. 2d 859 (1996). See <u>Smith v. State</u>, 675 So. 2d 100 (Ala. Cr. App. 1995). '"The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."' <u>Johnson</u>, 612 So. 2d at 1293, quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985)."

"'<u>Freeman v. State</u>, 722 So. 2d 806, 810 (Ala. Crim. App. 1998). However, "'the rule of <u>Brady</u> applies

25

only in situations which involve "discovery <u>after trial</u> of information which had been known to the prosecution but <u>unknown to the defense</u>."'" <u>Bates v. State</u>, 549 So. 2d 601, 609 (Ala. Crim. App. 1989) (quoting <u>Gardner v. State</u>, 530 So. 2d 250, 256 (Ala. Crim. App. 1987), quoting in turn <u>United States v. Agurs</u>, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)) (some emphasis added).'

"181 So. 3d at 1133-34. In addition, '"'[t]here is no <u>Brady</u> violation where the information in question could have been obtained by the defense through its own efforts.'"' <u>Jones v. State</u>, 322 So. 3d 979, 1025 (Ala. Crim. App. 2019) (citations omitted).

"On appeal, the State raises two arguments in support of its claim that no <u>Brady</u> violation occurred in this case. First, the State argues that M.D.D. was aware of the 2009 investigation and therefore could have obtained the 2009 DHR report 'through his own efforts.' (State's brief, p. 9.) Second, the State argues that, because M.D.D. was aware of the 2009 investigation and knew that E.D. had denied being sexually abused at that time, he 'knew or should have known of the essential facts that would have allowed him to take advantage of any exculpatory evidence' in the 2009 DHR report. (<u>Id.</u>, pp. 9-10.) Thus, according to the State, there is not a reasonable probability that the outcome of M.D.D.'s trial would have been different if he had been able to use the 2009 DHR report at trial.

"There is no merit to the State's first argument. As the circuit court noted in its judgment, M.D.D.'s counsel served DHR with a subpoena requesting '[a]ny documents or reports pertaining to … E.D.,' and, although DHR provided 'some records' in response to that subpoena, the 2009 DHR report was not included. This is not a case, then, '"'where the information in question could have been obtained by the defense through its own efforts.'"' <u>Jones</u>, 322 So. 3d at 1025

26

(citations omitted). Instead, M.D.D.'s counsel made an effort to obtain exculpatory evidence from the State through a legal process, and the State, i.e., DHR, either refused or inadvertently failed to provide that evidence.

"We do find merit, though, in the State's second argument, which is that M.D.D. was not prejudiced by the fact that he was not able to use the 2009 DHR report at trial. In its prejudice analysis, the circuit court found that the 2009 DHR report would have been 'clearly useful for impeaching E.D.'s testimony' because, the court reasoned,

"'[i]nstead of being forced simply to accept E.D.'s answer on cross-examination that she had never told anyone that M.D.D. had not abused her because "he did do it to me," defense counsel could have conducted a vigorous interrogation of [E.D.] if he had had the unproduced [2009 DHR report] in hand at the trial. He could have specifically asked E.D. via leading questions whether it was true that she had told DHR worker Salas that her father had not touched her inappropriately during the interview at her school on May 7, 2009; whether it was true that she told Salas at that time that she had never told anyone that she had been inappropriately touched by anyone; and whether it was true that she had said that anyone who said that she had mentioned being touched was lying.'

"However, it is undisputed that M.D.D.'s counsel received a 2010 DHR report in discovery, and that report states: 'There was a report in 2009 investigated by Salas that was not indicated for sexual abuse of [E.D.] by her dad. According to the narrative, [E.D.] denied she was being touched by anyone.'[1] (M.D.D. II, C. 443.) The information in that report, then, is quite similar to the information in the 2009 DHR report, which states: '[E.D.] … denied that she has

27

been touched by anyone. She denied that she told anyone that she had been touched by anyone. She stated that if someone said that, they made it up, because she did not say it.' (Id., C. 434.) Thus, because M.D.D.'s counsel had the 2010 DHR report, he did have a basis for confronting E.D. with the types of leading questions that the circuit court found he could have asked if he had received the 2009 DHR report. The differences between the two reports are not sufficient to conclude that the cross-examination of E.D. could have been more 'vigorous' or effective if M.D.D.'s counsel had been able to confront her with the 2009 DHR report, rather than the 2010 DHR report. Either report could have provided M.D.D.'s counsel with a basis for demonstrating to the jury that E.D. had denied being sexually abused by M.D.D. when she was interviewed by DHR in 2009.

"The circuit court also noted in its findings of fact that the 2009 DHR report contains 'additional information' that is favorable to M.D.D., including that 'school staff ha[d] no concerns about [E.D.]' and had told Salas that '"there was nothing that had been reported"'; that DHR had given M.D.D. '"strength" in every category within the Protective Capacities section of the report'; that Salas had interviewed J.D., who 'told [her] that everything is fine at home' and that he '"d[id] not think [E.D.] … has had any bad touches" and "would have told if [she] did"'; and that DHR had concluded 'that the allegation of sexual abuse … was not "substantiated by the assessment," with "no potential for future maltreatment."' However, the circuit court did not find that M.D.D. had been prejudiced by the suppression of that 'additional information.' Instead, when discussing the prejudice that stemmed from the suppression of the 2009 DHR report, the circuit court found only that the State's case against M.D.D. 'rests largely on the credibility of E.D.' and that, if M.D.D.'s counsel had received the report, he would have been able to use E.D.'s statements 'to cast significant doubt on [E.D.'s] testimony … to such an extent that the outcome of the case reasonably could have been an outright acquittal,' or, at the very least,

the jury might have convicted M.D.D. of second-degree sodomy, which would have carried a maximum sentence of 20 years' imprisonment, rather than first-degree sodomy. As we have already explained, the 2010 DHR report provided M.D.D.'s counsel with a basis for casting such doubt on E.D.'s testimony.

"Furthermore, to prevail on a Brady claim, the claimant has the burden of showing that suppressed evidence '"'"was material to the issues at trial."'"' Bryant, 181 So. 3d at 1133 (citations omitted). Evidence is material, however, '"'"only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."'"' Id. (citations omitted). Thus, if suppressed evidence is inadmissible, then it cannot be material because it could not have had any effect on the trial. Therefore, to establish that he was prejudiced by the suppression of the 'additional information' in the 2009 DHR report, M.D.D. would have to demonstrate that there is at least a 'reasonable probability' that such evidence would have been admissible at trial. Id. See United States v. Silva, 71 F.3d 667, 670 (7th Cir. 1995) ('While it is true that suppression of evidence … can … give rise to a Brady violation, evidence that would not have been admissible at trial is immaterial because it could not have affected the trial's outcome.' (internal citation omitted)); State v. Bullard, 858 So. 2d 1189, 1192 (Fla. Dist. Ct. App. 2003) (holding that, because the allegedly suppressed evidence would not have been admissible at trial, the defendant 'failed to establish the materiality element of a Brady violation and the trial court abused its discretion in ordering a new trial'); Wilkins v. State, 286 Kan. 971, 190 P.3d 957 (2008) (holding that the defendant could not prevail on his Brady claim because the allegedly suppressed evidence would not have been admissible); Commonwealth v. Mitchell, 576 Pa. 258, 839 A.2d 202 (2003) (same); United States v. Willis, 43 F. Supp. 2d 873, 879 (N.D. Ill. 1999) ('To be deemed "material" under Brady, evidence must be admissible.'); People v. Olinger, 112

Ill. 2d 324, 342, 493 N.E.2d 579, 588, 97 Ill. Dec. 772, 781 (1986) ('The nondisclosed evidence here could not possibly have affected the outcome because it is completely hearsay and would not have been admissible as evidence.'); and People v. Smith, 171 A.D.3d 1102, 1104, 98 N.Y.S.3d 313, 316-17 (2019) (holding that no Brady violation occurred when the allegedly suppressed evidence was inadmissible hearsay).

"With that standard in mind, we note that it is quite possible that the 'additional information' in the 2009 DHR report would not have been admissible at trial.[2] The 2009 DHR report constitutes hearsay, which of course is prohibited by Rule 802, Ala. R. Evid., unless one of the exceptions in Rule 803 or Rule 804, Ala. R. Evid., is applicable. That said, certain aspects of the 2009 DHR report might have been admissible under the business-records exception to the rule prohibiting hearsay. See Rule 803(6). But see T.C. v. Cullman Cnty. Dep't of Human Res., 899 So. 2d 281 (Ala. Civ. App. 2004) (holding that a DHR report was not admissible under the business-records exception to the rule prohibiting hearsay but appearing to leave open the possibility that some DHR reports might be admissible under that rule). However, much of the 'additional information' in the 2009 DHR report, including the statements by J.D. and the staff at E.D.'s school, is 'double hearsay' that would be prohibited by Rule 805, Ala. R. Evid., unless 'each part of the combined statements conforms with an exception to the hearsay rule provided in [the Alabama Rules of Evidence].' Id. We find no hearsay exception in Rule 803 or Rule 804 that would have authorized the admission of the statements by J.D. and the staff at E.D.'s school, so those statements likely would not have been admissible at trial even if the 2009 DHR report were to qualify as a business record. See Featherston v. State, 849 So. 2d 209, 215 (Ala. Crim. App. 2001) (holding that Rule 803(6) does not authorize the admission of hearsay within a business record unless the declarant of that hearsay was also acting in the ordinary course of business; otherwise, '"[t]he outsider's statement must fall within another hearsay exception to be admissible"'

30

(quoting <u>United States v. Baker</u>, 693 F.2d 183, 188 (D.C. Cir. 1982))), reversed on other grounds by <u>Ex parte State</u>, 849 So. 2d 217 (Ala. 2002); and <u>James v. State</u>, 723 So. 2d 776 (Ala. Crim. App. 1998) ('[I]t was not sufficient for the state to prove the [police] reports were created in the normal course of business of the Birmingham Police Department. The state also had to prove the statements made to the police by [the victim] and her grandmother fell within a recognized exception to the hearsay rule.').

"To be clear, we are not holding that the 'additional information' in the 2009 DHR report would have unquestionably been inadmissible in M.D.D.'s trial. That is not the question before us in this appeal. Rather, for our purposes, the relevant question is whether M.D.D. has satisfied his burden of demonstrating that the 'additional information' in the 2009 DHR report was material, and, as we have explained, to satisfy that burden, M.D.D. would need to demonstrate that there is at least a reasonable probability that such evidence would have been admissible at trial. That said, at no point in these proceedings, including in his briefs to this Court, has M.D.D. attempted to demonstrate that the 2009 DHR report would have been admissible at trial.[3] Instead, M.D.D. appears to have simply presumed from the outset that the 2009 DHR report would have been admissible, and, as we have explained, there are reasons to doubt the admissibility of the report; more importantly, the circuit court did not make any finding regarding the admissibility of that evidence. Thus, without any indication that the 2009 DHR report would have been admissible at trial, this Court cannot say that M.D.D. was prejudiced by the suppression of the 'additional information' contained therein.

"For the foregoing reasons, we hold that no <u>Brady</u> violation occurred in this case because, although the State either refused or inadvertently failed to provide the 2009 DHR report to M.D.D., M.D.D. failed to prove that he was prejudiced by the nondisclosure. Thus, the circuit court erred

31

by granting relief on M.D.D.'s <u>Brady</u> claim. We therefore reverse the circuit court's judgment and remand the case for that court to vacate the judgment.

"_____

"[1]'This Court may take judicial notice of its own records.' <u>T.C.S. v. State</u>, 386 So. 3d 857, 860 n.2 (Ala. Crim. App. 2023).

"[2]E.D.'s statements in the 2009 DHR report would have been admissible as impeachment evidence. <u>See</u> <u>C.L.A. v. State</u>, [Ms. CR-2022-0651, June 23, 2023] ___ So. 3d ___, ___ (Ala. Crim. App. 2023) (noting that, 'to the extent that … evidence is offered to impeach or discredit the witnesses, it is not substantive evidence' and 'thus … is not hearsay').

"[3]We note here that M.D.D.'s counsel did not proffer the 2010 DHR report for admission into evidence. (<u>M.D.D. I</u>, C. 86.)"

<u>M.D.D. III</u>, ___ So. 3d at ___.

In his brief to this Court, M.D.D. asserts:

"As applied to the case at hand, it could not be more clear that the State did not make the argument attributed to it in the decision of the Court of Criminal Appeals and thus did not meet its burden of showing error by the lower court. Any argument dealing with the prejudice prong of the <u>Brady</u> decision was clearly waived by its lack of inclusion in either of the State's briefs. The words employed by the Court in dealing with the issue were not used at all by the State and the 2010 DHR report, which the Court deemed sufficient to provide M.D.D. with a basis for cross examining E.D. equivalent to that of the 2009 report, was not only never mentioned by the State in either of its briefs, it was not even contained in the record on appeal in this case."

M.D.D.'s brief, pp. 22-23.

Rule 28(a)(10), Ala. R. App. P., provides that an appellant's brief shall include "[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statute, or other authorities, and parts of the record relied on." It is well established that "'[a]n argument not made on appeal is abandoned or waived.' Avis Rent A Car Sys., Inc. v. Heilman, 876 So. 2d 1111, 1124 n.8 (Ala. 2003)." Muhammad v. Ford, 986 So. 2d 1158, 1165 (Ala. 2007). See, e.g., Jackson v. State Farm Mut. Auto. Ins. Co., [Ms. SC-2024-0588, June 20, 2025] ___ So. 3d ___, ___ n.2 (Ala. 2025); Price v. Alabama One Credit Union, 397 So. 3d 549, 556 (Ala. 2023); Douglas v. Roper, 374 So. 3d 652, 672 (Ala. 2022); A.D.W. v. C.L., [Ms. CL-2023-0776, Feb. 7, 2025] ___ So. 3d __, ___ n.2 (Ala. Civ. App. 2025); L.A.R. v. J.B.R., 401 So. 3d 1171, 1178 n.2 (Ala. Civ. App. 2024); Quinnie v. State, 382 So. 3d 1274, 1283 n.3 (Ala. Crim. App. 2022); Brownlee v. State, 666 So. 2d 91, 93 (Ala. Crim. App. 1995); .

In its opinion, the Court of Criminal Appeals stated that, in its brief on appeal, the State had raised two arguments:

"First, the State argues that M.D.D. was aware of the 2009 investigation and therefore could have obtained the 2009

DHR report 'through his own efforts.' (State's brief, p. 9.) Second, the State argues that, because M.D.D. was aware of the 2009 investigation and knew that E.D. had denied being sexually abused at that time, he 'knew or should have known of the essential facts that would have allowed him to take advantage of any exculpatory evidence' in the 2009 DHR report. (Id., pp. 9-10.) Thus, according to the State, there is not a reasonable probability that the outcome of M.D.D.'s trial would have been different if he had been able to use the 2009 DHR report at trial."

M.D.D. III, ___ So. 3d at ___. After rejecting the claim that M.D.D. could have obtained the 2009 DHR report through his own efforts, the Court of Criminal Appeals went on to hold "that M.D.D. was not prejudiced by the fact that he was not able to use the 2009 DHR at trial" and that, therefore, no Brady violation occurred. M.D.D. III, ___ So. 3d at ___. It based its holding, in part, on its conclusion that the 2010 DHR report provided M.D.D.'s counsel with "a basis for confronting E.D. with the types of leading questions the circuit court found he could have asked if he had received the 2009 DHR report." M.D.D. III, ___ So. 3d at ___.

In its appellant's brief, the State asserted:

"What M.D.D. is attempting to do and, unfortunately, has been successful at in the trial court below, is to obscure and confuse the issue of whether he was aware of the investigation that resulted in the May 9, 2009 DHR report as opposed to when he actually received the report for the first time. It is a distinction with a difference. Unaddressed in any

34

> substantial way by the trial court is any discussion or finding as to whether the information could have been obtained by M.D.D. through his own efforts. There is no <u>Brady</u> violation when the information in question could have been obtained by the defendant through his own efforts. <u>Jones v. State</u>, 322 So. 3d 979, 1025 (Ala. Crim. App. 2019). Evidence is not suppressed when a defendant either knew or should have known of the essential facts that would have allowed him to take advantage of any exculpatory evidence. <u>Id.</u>"

State's brief in <u>M.D.D. III</u>, pp. 9-10. When read in its entirety, it is clear that the State's argument in the Court of Criminal Appeals focused solely on its assertion that the State had not suppressed the 2009 DHR report because M.D.D. knew that he had previously been investigated for allegations that he had sexually abused E.D. and knew that he had been cleared of those allegations. The State did not actually present any argument that M.D.D. had failed to prove that the information included in the 2009 DHR report was material or any argument that M.D.D. was not prejudiced by the suppression of 2009 DHR report. Additionally, the State did not actually address the circuit court's findings that "'[t]here is a reasonable probability that actually having the May 2009 DHR CAN report, as opposed to just knowing of it, would have made a difference in the outcome.'" Even though M.D.D. argued in his appellee's brief that he had proven that he was prejudiced by the suppression of the 2009 DHR

35

report, the State did not address that argument in its reply brief. Rather, the State reiterated its previous arguments and asserted:

> "The trial court's ruling was based on an incorrect conclusion of law that the State violated M.D.D.'s rights under Brady. 'No Brady violation occurs when the facts alleged to have been suppressed were within the knowledge of the defendant.' Jones v. State, 322 So. 3d [979,] 1025 [(Ala. Crim. App. 2019)]. As shown above, the alleged facts were known by M.D.D. at the time of trial."

State's reply brief in M.D.D. III, p. 4. Additionally, the State did not even mention, much less present any argument regarding, the 2010 DHR report in either its opening brief to the Court of Criminal Appeals or in its reply brief.

The Court of Criminal Appeals also discussed the circuit court's finding that the 2009 DHR report included "additional information" that was favorable to M.D.D. First, it noted that the circuit court did not find that M.D.D. had been prejudiced by the suppression of that "additional information." It went on to state that M.D.D. had not satisfied his burden of demonstrating that the "additional information" in the 2009 DHR report was material because he had not established that there was a reasonable probability that that "additional information" would have been admissible at trial. However, the State did not present any

36

argument regarding the materiality or admissibility of the "additional information" included in the 2009 DHR report, either in its opening brief to the Court of Criminal Appeals or in its reply brief. In fact, the State did not address the "additional information" included in the 2009 DHR report at all.

For these reasons, the Court of Criminal Appeals erred when it reversed the circuit court's judgment based on arguments that the State did not raise on appeal.

## Conclusion

Based on the foregoing, we reverse the Court of Criminal Appeals' judgment in this case and remand this case to that court for proceedings consistent with this opinion.[2]

REVERSED AND REMANDED.

Stewart, C.J., and Bryan, Sellers, Mendheim, Cook, and Lewis, JJ., concur.

McCool, J., recuses himself.

---

[2]Based on our holding in this regard, we pretermit discussion of the remaining arguments raised by the parties.